FILED IN CLERK'S OFFICE
U.S.D.C. -Gainesville

JUN 1 7 2013

JAMES N. HATTEN, Clerk
By *Vicki Dougherty*
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

David Puckett                          :
and                                    :
Joyce Puckett                          :
Plaintiffs                             :
                                       :
                                       :  Civil Action File #  **2:13-CV- 131**
                                       :
vs.                                    :
                                       :
                                       :  Jury Trial Requested
Board of Trustees of the First Baptist :
Church of Gainesville, Inc.; and,      :
First Baptist Church of Gainesville    :
Defendants                             :
                                       :
                                       :
_____        :

## COMPLAINT

COME NOW the Plaintiffs, David Puckett and Joyce Puckett by their attorney,

John D. Marshall, and file this complaint against Defendants for damages and

other relief because Defendants discriminated unlawfully against the Plaintiff,

David Puckett, by discharging him, by failing to accommodate his disability and

by retaliating against him for asserting his rights under the law, all in violation of

the Americans With Disabilities Act, 42 U.S.C. 12101, et seq, the Georgia Equal

Employment for Persons with Disabilities Code, O.C.G.A. Section 34-6-1 et seq.;

1

and, because both Plaintiffs suffered extreme emotional distress as a result of Defendants outrageous abusive and retaliatory conduct in violation of Georgia law [O.C.G.A. Section 9-2-3; Yarbray v. Southern Bell, 261 Ga. 703 (1991)].

## The Parties

1.     The Plaintiff David Puckett resides in Hall County, Georgia. He worked for Defendant from July 1997 to September 2012 as a maintenance worker in Defendant's church.

2.     The Plaintiff, Joyce Puckett is David Puckett's wife and caretaker.

3.     The Defendant, Trustees of the First Baptist Church of Gainesville, Inc. is a Georgia not-for-profit corporation with its principal place of business in Gainesville, Hall County, GA that owns assets and/or operates a Baptist church at 751 Green Street, Gainesville, GA.    Dr. Kent Murphey, Associate Pastor Administration, is the agent for service of process.

4.     The Defendant, First Baptist Church of Gainesville is believed to be an unincorporated association that owns or operates a church at 751 Green Street, Gainesville, Hall County, GA.  Dr. Kent Murphey is an officer or official member

2

of such organization or association and as such may receive service of process on behalf of the First Baptist Church of Gainesville.

## Jurisdiction and Venue

5.      This is an action arising under the laws of the United States as well as under the laws of the State of Georgia, in particular, The Americans with Disabilities Act, The Georgia Equal Employment for Persons with Disabilities Code, and for intentional infliction of emotional distress under Georgia law.   Jurisdiction is invoked pursuant to 28 U.S.C section 1331 which provides that, " the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"; pursuant to 28 U.S.C. Section 1367 which provides that the District Court shall have supplemental jurisdiction "…in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution";  and, pursuant to the laws cited in the preceding paragraph

6. Venue is proper pursuant to 28 U.S.C. 1391 (b) which provides that "A civil action may be brought in—

3

(1) a judicial district in which any defendant resides, if all defendants are

residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred, or a substantial part of property that is the

subject of the action is situated."

All defendants reside in the Federal District Court's Northern District of Georgia

and the events giving rise to Plaintiff's complaint occurred there.

## Background Facts

6.    Plaintiff, David Puckett was employed by Defendants as a maintenance

worker in the church. His regular job over nearly all his 15 years of employment

was cleaning and otherwise maintaining the church sanctuary and related areas.

The sanctuary is estimated to contain from 15,000 to 20,000 square feet of space

occupied by pews, pulpits and other facilities normally found in a large Baptist

church. He was entrusted with keys to the church because he answered alarms after

church hours and, for many years, opened the church for worship services on

Sunday morning.

7.     Plaintiff's employment with the church began on or about July 1997 and ended in September 2012.

8.     It is beyond dispute that Plaintiff, David Puckett performed his job duties exceptionally well. In July 2012 on or near the anniversary date of his employment with the church he was awarded a $1000.00 bonus. From time to time over the course of his employment he received commendations from church members citing his good work in maintaining the church sanctuary. He was and continued to be as of the date of his discharge on September 28, 2012 qualified for the work he performed notwithstanding his disability.

9.     The Plaintiff suffers from a horrific mental condition causing daily suffering, which in Plaintiff's case is characterized by severe anxiety, depression, fear, nightmares, seizures,  delusions, hallucinations, difficulty in meeting and dealing with other people, multiple, confused and disorganized thought processes, and insomnia among other symptoms. His symptoms are controlled by medications and by work. Plaintiff's mental condition is a disability as defined in the cited state and Federal laws.

10.     David Puckett loved his job at the church. His job was an essential part of keeping the symptoms of his illness under control. He planned on working at the church until he retired.

11.     Mr. Puckett's mental condition limits the amount of work he can perform. While plaintiff was able to perform his sanctuary maintenance job 8 hours per day, 40 hours per week, his mental condition did not allow him to take on additional tasks, much less two full time jobs. Thus, when the Defendants required that, in addition to the sanctuary and related facilities Plaintiff also clean classrooms in the classroom building he was not able to do so to the required standards.

12.     Defendants were well aware of Plaintiff's mental illness and the work limitations that his illness imposed on him. Among other things, Dr. Kent Murphey, Associate Pastor for Administration the person who engineered Plaintiff's discharge, had a mentally ill brother and through that experience knew of the work limiting characteristic of David Puckett's disability.

13.     Near the end of his employment in 2012, Defendants deliberately expanded David Puckett's duties knowing that he could not cope with the expanded job

duties and would fail. This was done in order to provide an excuse to discharge him. In fact no one, even a person without the mental handicap suffered by the Plaintiff could have performed the assigned tasks to the expected standards. Currently, three or more people perform the job duties that Mr. Puckett was expected to perform alone. In short Defendant's reasons for discharging the Plaintiff, David Puckett were a pretext to get rid of him because of his mental illness.

14.    Defendants made no effort to accommodate David Puckett's mental illness and did not even consider or discuss with him ways to accommodate his mental disability.

15. Dr. Murphy admitted to Plaintiff, Joyce Puckett, that David Puckett was discharged because of mental inability to take on extra work, i.e. to perform two jobs.

16. Further evidence of Defendants knowledge of the characteristics of schizophrenia, as well as his bias against persons with mental illness, is found in another conversation with Plaintiff, Joyce Puckett.  According to Mrs. Puckett, Dr.

Murphey said, "Yes I know what schizo is, my brother has it and if it wasn't for SSI we then family would be broke. We take care of him, we pay his bills with his check and we take him to the doctors, then let me give you an example, he has to be at the doctor's office at 2:00 o'clock, he said we will get right up to the door and he knows he has only two minutes to get inside and he will have to stop and smoke a damn cigarette! And it gets on my nerves so bad, so yes I know all about schizo and mental illness".

17. On one or more occasions, David Puckett was verbally abused by his immediate supervisor. In mid-2011 the supervisors abusive speech concerned Mr. Puckett's refusal to sign a disciplinary notice that listed offenses or failures of job performance that Mr. Puckett did not commit. During this outburst the supervisor brought up Mr. Puckett's mental illness and suggested he was off his medications.

18. Violent or angry speech can worsen the condition of a schizophrenic even causing hospitalization. Plaintiff's supervisor's tirade was intentional and done for the purpose of producing such emotional distress in Plaintiff that he would admit to the offenses or failures of job performance just to get away from the abuse.

19.    On or about October 8, 2011, Plaintiff, David Puckett, was admitted to the hospital for a mental breakdown. He subsequently recovered and returned to work.

20.    On or about October 8, 2012, Plaintiffs' engaged legal counsel to determine whether their rights had been violated. On or about October 10, 2012, Plaintiff's counsel wrote to Dr. William Coates, Defendant's Senior Pastor advising of his representation, that the Church may have violated Mr. Puckett's rights as a disabled person and then advising Dr. Coates that the Puckett's wanted to, as the Bible enjoins, settle that dispute rather than submitting it to the courts.

21.    On or about October 16th, the Plaintiff, Joyce Puckett, called the Defendant church to take them up on an offer to assist the Puckett's with payment of their bills. The offer was made at the time of Mr. Puckett's discharge. According to Mrs. Puckett, "Kent Murphey, he got on the phone and he didn't even let me speak, he was angry and rude to me, he said you and David are not our friends anymore, he said we don't take kind to people that try and sue us, he said that David's severance pay which they only promised to give him 2 weeks, after working for 15 years with them, they was going to stop [payment on the check] he wasn't going to get it." Dr. Murphy's conduct was done intentionally for the purpose of inflicting

extreme emotional distress on both Plaintiffs all because they had the temerity to assert their rights.

22.     On October 16th in an email to Plaintiff's counsel, Dr. Murphey affirmed the position, taken in his conversation with Mrs. Puckett, that the church would stop payment on Mr. Puckett's two week severance check in retaliation for asserting, through counsel, his right to protection under state and Federal law against discrimination because of his mental disability. A stop order on the severance check was issued to the bank by the church.

23.     Mental illness is a disability protected by the Americans with Disabilities Act, 42 U.S.C. Section 12112 and 12102; the Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. Section 34-6A-2(3).

24.     The Americans with Disabilities Act prohibits retaliation for having opposed practices made unlawful by the Act, 42 U.S.C. Section 12117, 2000e-5, and 200e-3; The Georgia Disabilities Code prohibits retaliation for having opposed practices prohibited by the Code. O.C.G.A. Section 34-6A-5.

25.     As a consequence of Defendants' unlawful and outrageous conduct Plaintiffs are now poor, relying on a small Social security disability check and the

charity of other churches and friends to eat and to otherwise pay for the necessities of life.

26.    As a further consequence of Defendants unlawful and outrageous conduct the physical and mental health of both Plaintiffs has worsened.

27.    As a further consequence of Defendants unlawful and outrageous conduct are suffering severe emotional distress.  As Mrs. Puckett describes it, "David and I went from making ends meet to nothing in one short day, we went from buying foods we want to eat, to going to churches and eating what we get for free. My diabetes has gotten worse because I have to eat certain foods, but after the job loss Joyce has to eat whatever the churches give out. We have to stand in a car line for over an hour to get two boxes of food twice a month. We have cut back on can we afford to have an extra glass of milk or will we get threw another day to another day with what the church has given us to eat. We have decided to sit in the dark most times for we are in fear of how will we pay the electric bill, we are in fear of are we going to have heat this winter. We have cut back on water, we are fearful of what we will do from one day to the next. We are in [constant fear of what we are going to do]."

28.    Defendants continue to retaliate against Plaintiffs. Not one time since Mr. Puckett's discharge have the Defendants offered to provide food or other assistance despite the fact that the church advertises its mission to the poor and the hungry regularly and Christian principles to which the Defendant's purportedly subscribe enjoin Christians to love all, even their enemies.

First Claim for Relief<br>Discharge for Mental Disability

29.    Defendants discharged Plaintiff, David Puckett, because of his mental illness in violation of the Americans with Disabilities Act, 42 U.S.C. 12112; the Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. Section 34-6A-4 (a).  As a consequence thereof Plaintiff, David Puckett suffered a loss of income and other pecuniary losses, pain and suffering, a worsening of his physical and mental health and other damages to be proved at trial.

Second Claim for Relief<br>Failure to Make a Reasonable Accommodation to Plaintiff's Disability

32. Failure to make a reasonable accommodation to the limitations of an otherwise qualified individual that are imposed on Plaintiff by his known mental disability. As a consequence thereof Plaintiff has suffered a loss of income, mental pain and

suffering, mental injury, medical expense and other losses to be proved by evidence at trial.

## Third Claim for Relief

### Retaliation

33. Defendants engaged in unlawful retaliation against Plaintiff, David Puckett, in violation of the Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. Section 34-6A-5, by stopping payment on his severance pay check, by refusing previously promised financial assistance and in other ways to be proved by evidence at trial. As a consequence thereof Plaintiff has suffered a loss of income, mental pain and suffering, mental injury, medical expense and other losses to be proved by evidence at trial.

## Fourth Claim for Relief
### Intentional Infliction of Emotional Distress By Outrageous Conduct

34.  The Defendant by and through it employees and agents intentionally inflicted severe emotional distress on Plaintiffs by engaging in outrageous conduct to wit: retaliating against Plaintiffs because David Puckett asserted his right to be free of unlawful discrimination because of his disability; unlawfully discharging David

Puckett because of his mental disability; by verbally abusing the Plaintiff, David Puckett; and, in other ways to be proved at trial.   As a consequence thereof Plaintiffs have been driven to penury, have suffered extreme emotional distress, a worsening of their physical and mental health, have incurred medical expense and other pecuniary losses, pain and suffering, the loss of the enjoyment of life, a loss of the society and comfort of each other and other damages to be proven at trial.

## Prayer for Relief

Accordingly, Plaintiff prays that Defendant upon the evidence, finding of the jury and applicable law, the court enter judgment:

1. Declaring that the Defendants discharged Plaintiff, David Puckett in violation the Americans with Disabilities Act 42 U.S.C. Section 1201 et seq. and the Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. 34-6A-1 et seq;

2. Declaring that Defendants failed to accommodate the known limitations imposed on David Puckett, an otherwise qualified individual, by his mental disability in violation of the disability civil rights laws cited;

3. Declaring that the Defendants retaliated against Plaintiff, David Puckett, because of his opposition to violations of the disability civil rights laws cited in paragraph 1 above.

4. Declaring that the Defendant has intentionally inflicted emotional distress on Plaintiffs by its conduct in violation of Georgia law;

5. Ordering the Defendant's to re-instate Plaintiff, David Puckett;

6. Awarding Plaintiff s back pay, front pay, lost income and benefits, compensatory damages and punitive damages against the Defendants for its wrongful acts;

7. Determining and awarding a reasonable attorney's fee and the costs and expenses of this action to Plaintiffs and their counsel against the Defendant;

8. Awarding both pre-judgment and post-judgment interest as provided by law.

9. Providing Plaintiffs all other relief to which they show themselves entitled at law or in equity.

<u>Request for a Jury Trial</u>

10.    Plaintiffs request a jury trial.

Respectfully submitted,

John D. Marshall,
Georgia Bar # 471650,
Attorney for Plaintiff

**The John Marshall Law Firm**
12600 Deerfield Parkway, Suite 100
Alpharetta, GA 30004
*Ph: 678-358-5623*
*Fax: 678-566-3551*
*Email: jdmlawfirm@gmail.com*