IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| DAVID PUCKETT and JOYCE PUCKETT, | : |
| | : |
| Plaintiffs, | : |
| | : CIVIL ACTION NO. |
| v. | : 2:13-CV-00131-RWS |
| | : |
| BOARD OF TRUSTEES OF THE FIRST BAPTIST CHURCH OF GAINESVILLE, INC., and FIRST BAPTIST CHURCH OF GAINESVILLE, | : |
| | : |
| Defendants. | : |

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss [10]. After reviewing the record, the Court enters the following Order.

### **Background**[1]

This disability discrimination action arises out of Plaintiff David Puckett's ("Mr. Puckett" or "Plaintiff") termination from his job as a maintenance worker at the First Baptist Church of Gainesville. Mr. Puckett worked at the church for over fifteen years, from July 1997 until September

---

[1] The following facts are taken from Plaintiffs' Complaint [1] and are assumed to be true for the purposes of Defendants' Motion to Dismiss [10].

2012, and was responsible for cleaning and maintaining the church sanctuary and other areas. He performed his duties well and received a $1,000 bonus in July 2012. Church members occasionally commended him for his good work.

Mr. Puckett suffers from schizophrenia, a condition characterized by severe anxiety, depression, fear, nightmares, seizures, delusions, hallucinations, difficulty interacting with people, trouble thinking, and insomnia. He controls his symptoms by taking medication and working, but his ability to work is limited to eight hours per day for forty hours per week. Dr. Kent Murphy, Associate Pastor for Administration, knew of Plaintiff's condition and was aware of how it affected him because Dr. Murphy has a brother with schizophrenia.

In 2012, near the end of Mr. Puckett's employment, Defendants increased his duties to include cleaning the church's classrooms despite knowing his mental limitations. Plaintiff was unable to perform the extra duties to the required standards, which he alleges even people without a mental illness would have been incapable of meeting. He alleges that Defendants assigned him this work because they knew he would fail and then used his failure as pretext to

discharge him due to his disability.  In fact, at least three people now perform the job duties Plaintiff had been assigned to perform alone.

Mr. Puckett further charges that Dr. Murphy admitted to Plaintiff Joyce Puckett, Mr. Puckett's wife, that he was discharged because of his mental inability to take on extra work.  Dr. Murphy also told Ms. Puckett,

> Yes I know what schizo is, my brother has it . . . .  We take care of him, we pay his bills with his [Supplemental Security Income] check and we take him to the doctors, then let me give you an example, he has to be at the doctor's office at 2:00 o'clock, he said we will get right up to the door and he knows he has only two minutes to get inside and he will have to stop and smoke a damn cigarette!  And it gets on my nerves so bad, so yes I know all about schizo and mental illness.

(Compl., Dkt. [1] ¶ 16.)

Additionally, Mr. Puckett says that in mid-2011 he was verbally abused by his supervisor when he refused to sign a disciplinary notice regarding offenses and failures he did not commit.  The supervisor mentioned Mr. Puckett's mental illness and suggested that he was off his medications.  Around October 8, 2011, Mr. Puckett had a mental breakdown and was hospitalized.

When Mr. Puckett was terminated, the church offered to help Plaintiffs pay their bills.  After Plaintiffs' counsel informed Defendants that they may

3

have violated Mr. Puckett's rights, Defendants stopped payment on a severance check they had issued him. Plaintiffs state that they have suffered emotional distress and that Defendants' actions have harmed their physical and mental health. The Pucketts allege the following claims against the Board of Trustees of the First Baptist Church of Gainesville, Inc. and the First Baptist Church of Gainesville: (1) discriminatory discharge in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Georgia Equal Employment for Persons with Disabilities Code ("GEEPDC"), O.C.G.A. § 64-6A-4(a); (2) failure to make a reasonable accommodation; (3) retaliation in violation of the GEEPDC; and (4) intentional infliction of emotional distress. Defendants move for dismissal of all claims.

## Discussion

### I.   Motion to Dismiss Legal Standard

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187

4

F.3d 1271, 1273 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations omitted).  However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id.

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Twombly, 550 U.S. at 561 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule with the "plausibility standard," which requires that factual allegations "raise the right to relief above the speculative level." Id. at 556. The plausibility standard "does not[, however,] impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Id.

5

AO 72A
(Rev.8/82)

**II.  ADA Claim**

Mr. Puckett alleges both that he was discharged because he suffers from a mental disability and that Defendants failed to reasonably accommodate his disability.  The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that "(1) he is disabled; (2) he was a 'qualified individual' at the relevant time, meaning he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) he was discriminated against because of his disability."  <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249, 1255 (11th Cir. 2001).  Unlawful discrimination also includes the failure to provide "reasonable accommodations" for the disability unless doing so would impose undue hardship on the employer.  42 U.S.C. § 12112(b)(5)(A).

Defendants assert that Mr. Puckett's ADA claims fail for three reasons: (1) he was not a qualified individual because he was unable to perform his

6

duties to the required standards; (2) he failed to identify a reasonable accommodation that would have enabled him to perform his duties to the required standard; and (3) there is no reasonable accommodation for Plaintiff's schizophrenia.  (See Def.'s Br., Dkt. [10-1] at 7.)

First, Defendant's argument that Plaintiff is not a qualified individual because he could not perform the required duties—after Defendants substantially increased his responsibilities—is unavailing.  Plaintiff is capable of working eight hours a day for forty hours per week, and he performed his duties well for a number of years before being terminated.  Even though Plaintiff acknowledges that he was unable to perform the increased amount of work asked of him, Plaintiff also alleges facts demonstrating that Defendants increased his workload to create a pretext for discriminatory discharge.  In that regard, he has sufficiently alleged at the motion to dismiss stage that he is a qualified individual capable of performing the essential functions of his job without an accommodation.  Defendants have not raised any other arguments with respect to the discriminatory discharge claim, and so Defendant's motion is **DENIED** as to that claim.

Next, Defendants fault Plaintiff for not identifying a reasonable accommodation and further argue that no reasonable accommodation exists considering Plaintiff alleges that nobody could have adequately performed the work assigned to him. "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." Lucas, 257 F.3d at 1255-56. "In general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed. . . . Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." 29 C.F.R. pt. 1630 App. § 1630.9. Mr. Puckett does not allege that he requested an accommodation before he was terminated, stating only that "Defendants made no effort to accommodate [his] mental illness and did not even consider or discuss with him ways to accommodate his mental disability." (Compl., Dkt. [1] ¶ 14.) However, "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997). Because Plaintiff fails to allege that he requested an

8

accommodation, Plaintiff's ADA discrimination claim based on a failure to accommodate is due to be **DISMISSED**.[2]

### III.   GEEPDC Claims

Plaintiff next alleges that Defendants discharged and retaliated against him in violation of the GEEPDC by stopping payment on his severance check and by refusing to provide financial assistance that they had previously promised him.  Defendants argue that Mr. Puckett fails to meet the statutory definition of an "individual with disabilities."

Under the GEEPDC, an " '[i]ndividual with disabilities' means any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities and who has a record of such

---

[2]Although Plaintiffs request leave to amend their Complaint, the Court finds that the substance of the amendments offered in their Response still fails to state a claim.  (Dkt. [14] at 2-3.)  Plaintiffs admit that they did not know Mr. Puckett had to request an accommodation, (id.) And they did not propose a reasonable accommodation in their Complaint.  Moreover, allegations that Defendants refused to discuss possible accommodations post-discharge are futile.  See Willis, 108 F.3d at 284-85 (rejecting plaintiff's argument that employer was required to enter into an interactive process with her to identify an accommodation after she only requested one "as an abstract concept").  Accordingly, the Court declines to grant Plaintiffs leave to amend.  See Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999) (stating that a trial court may choose not to allow a party to amend when amendment would be futile).

9

impairment." O.C.G.A. § 34-6A-2. A "physical or mental impairment" is in turn defined as:

> (A) Any physiological disorder or condition or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, or endocrine; or
>
> (B) Mental retardation and specific learning disabilities.

Id. § 34-6A-2(7).

Although schizophrenia is a mental illness, under the limited scope of the GEEPDC, Plaintiff's condition does not qualify as a physiological disorder, mental retardation, or a specific learning disability. To illustrate, the Georgia Court of Appeals has ruled that depression and claustrophobia are not mental impairments within the meaning of the GEEPDC. See Bowers v. Estep, 420 S.E.2d 336, 340 (Ga. Ct. App. 1992) (noting that the statute "clearly limits the definition of 'mental impairment' " to mental retardation and specific learning disabilities). As a result, Plaintiff is not covered under the statute and thus his state-law claims for discharge and retaliation in violation of the GEEPDC are due to be **DISMISSED**.

AO 72A
(Rev.8/82)

## IV. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove that: "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Frank v. Fleet Finance, Inc. of Ga., 518 S.E.2d 717, 720 (1999) (internal citations and quotations omitted). In support of their claim, Plaintiffs cite the comments Dr. Murphy made to Ms. Puckett about schizophrenia; Defendants' decision to increase Mr. Puckett's duties despite knowledge of his condition; and verbal abuse by his immediate supervisor after Mr. Puckett refused to sign a disciplinary notice for offenses he did not commit. As offensive as this conduct may have been, Georgia courts have found that such behavior does not amount to extreme and outrageous conduct.

11

In Jarrard v. United Parcel Service, Inc., the Georgia Court of Appeals held,

> The law is clear that performance evaluations critical of an employee do not fall into the outrageous category even though (i) given in crude and obscene language, (ii) done with a smirk, (iii) conducted in a belittling, rude, and condescending manner to embarrass and humiliate the employee, (iv) given at a poor time, (v) tinged with the intent to retaliate for former conflicts, and (vi) constituting a false accusation of dishonesty or lack of integrity.

529 S.E.2d 144, 147 (Ga. Ct. App. 2000) (footnotes omitted). The court held as such even though the plaintiff suffered "a complete mental breakdown from which he ha[d] not recovered." Id. at 146. Measured against this standard, the respective statements to Mr. and Ms. Puckett at issue here are not outrageous. Moreover, "Georgia courts have held that an employer's termination of an employee—however stressful to the employee—generally is not extreme and outrageous conduct." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir. 1993) (collecting cases).

The Court acknowledges that Defendants were aware of Plaintiff's schizophrenia and were in a position of power over him as his employer. "Such factors may produce a character of outrageousness that otherwise might not exist." Id. at 148. But as the court in Jarrard explained, "the conduct must

12

inherently have an element of outrageousness or extreme wrongfulness." Id.  In Bowers v. Estep, the plaintiff alleged that his supervisors "knew of his [severe claustrophobia and depression] and intentionally harassed, threatened, intimidated, and belittled him and maliciously changed conditions of his job, causing him to take a leave of absence (with full pay and benefits) and be admitted to a psychiatric clinic." 420 S.E.2d at 337.  Still, the court found that the defendants' actions "cannot be characterized as the type of shocking and outrageous behavior necessary for a recovery of damages." Id. at 339.  In fact, the court observed that tortious or criminal intent—or even malice—has not been enough to give rise to an intentional infliction of emotional distress claim. Id.  That being the case, expanding Plaintiff's job duties and making comments about his mental condition was not outrageous conduct under Georgia law despite Defendants' controlling relationship over Mr. Puckett and knowledge of his mental condition.  Plaintiffs' intentional infliction of emotional distress claim is accordingly **DISMISSED**.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [10] is **GRANTED in part** and **DENIED in part**.  Plaintiff's discriminatory discharge

13

AO 72A
(Rev.8/82)

claim under the ADA (Count I) remains.  All other claims are hereby

**DISMISSED**.

    **SO ORDERED**, this   17th   day of April, 2014.


                    **RICHARD W. STORY**
                    United States District Judge