IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| DAVID PUCKETT AND JOYCE PUCKETT, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 2:13-CV-131 |
| v. | ) ) ) | |
| BOARD OF TRUSTEES OF THE FIRST BAPTIST CHURCH OF GAINESVILLE, INC.; AND FIRST BAPTIST CHURCH OF GAINESVILLE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

COMES NOW Defendants Board of Trustees of the First Baptist Church of Gainesville, Inc. and First Baptist Church of Gainesville (hereinafter "First Baptist" or the "Church") and file this their Brief in Support of their Motion for Summary Judgment stating as follows:

**I.    PROCEDURAL HISTORY**

Plaintiffs filed their Complaint on June 17, 2013. (Doc. 1.) Defendants filed a Motion to Dismiss on September 16, 2013. (Doc. 10.) On April 17, 2014, this Court entered an Order on Defendants' Motion to Dismiss. (Doc. 26.) In this Order the Court dismissed all of Plaintiffs' claims except for Plaintiff David

Puckett's claim of discriminatory discharge under the American with Disabilities Act, which is Count I of Plaintiffs' Complaint. Therefore, Defendants' Motion for Summary Judgment, and this supporting Brief, only address Plaintiffs' last remaining claim.

## II. STATEMENT OF FACTS

Dr. Kent Murphey has served on the staff of First Baptist since 1992. (Murphey Dep. p. 8, l. 7-9.)[1] He has been the Minister of Administration since that time. (Murphey Dep. p. 12, l. 15-25.) Dr. Murphey hired David Puckett to work in the maintenance department of First Baptist in the 1990s. (Murphey Dep. p. 13, l. 2-6.) David Puckett was very responsible in terms of showing up, working his shift, and not leaving before the end of his shift. (Murphey Dep. p. 14, l. 3-5.) He could be counted on to work on the weekends, which included opening the Church on Sunday mornings, and having it ready for Sunday services. (Murphey Dep. p. 14, l. 9-12, 22-23.)

David Puckett preferred not to be around groups of people. (Murphey Dep. p. 15, l. 25 - p. 16, l. 1-2.) Kent Murphey, however, never saw David Puckett exhibit abhorrent [sic] thinking, paranoia, depression, or act like he was hearing voices. (Murphey Dep. p. 18, l. 18-21.) Kent Murphey was not aware of David Puckett supposedly having a mental breakdown in the fall of 2011. (Murphey Dep.

---

[1] Excerpts from the deposition of Kent Murphey are attached as Exhibit "A".

p. 38, l. 15 - p. 39, l. 5.) He was not aware of David Puckett supposedly being in a mental hospital, Summit Ridge, in the fall of 2011. (Murphey Dep. p. 60, l. 2-7.) Lastly, Kent Murphey was not aware of David Puckett seeing a psychiatrist until he talked with David's wife, Joyce, after David Puckett's discharge. (Murphey Dep. p. 60, l. 8-12.)

In June 2011 David Puckett received a warning from Kent Murphey for various transgressions at work. (Murphey Dep. p. 23, l. 5 - p. 25, l. 3; p. 31, l. 1-4; Exhibit "D" - Personnel Warning to David Puckett.) Among David Puckett's transgressions were repeated use of his cell phone during work hours, failure to reliably complete assignments, and inconsistent closing and securing of the Church at the end of his shift. (Exhibit "D".) This began the period of difficulty the Church had with David Puckett. (Murphey Dep. p. 24, l. 21 - p. 25, l. 3.)

In June 2012 David Puckett showed his opposition to working in children's classrooms. (Murphey Dep. p. 37, l. 7-9.) These classrooms had previously been used only on Wednesday nights and Sunday mornings. (Murphey Dep. p. 37, l. 14-19.) The Church was starting to use these classrooms as part of a weekday preschool program that was beginning that summer on a partial basis. (Murphey Dep. p. 37, l. 14-19.) David Puckett was asked to take part in the cleaning of these classrooms, but he refused. (Murphey Dep. p. 37, l. 20-23.) David Puckett was

heard by another maintenance worker to say that he had never cleaned a children's classroom and he never will.  (Murphey Dep. p. 37, l. 22 - p. 38, l. 1.)

Toward the latter part of June 2012, Kent Murphey and Bo Rodgers, David Puckett's maintenance supervisor, began talking about David Puckett's refusal to clean the classrooms.  (Murphey Dep. p. 56, l. 24 - p. 57, l. 2.)  David Puckett continued to do his other tasks, he just refused to clean the classrooms.  (Murphey Dep. p. 57, l. 18-20.)  David Puckett was still closing the Church, opening the Church on Sunday mornings, and doing a series of very critical tasks.  (Murphey Dep. p. 58, l. 4-9.)  He did not fail to perform when he chose to perform.  (Murphey Dep. p. 58, l. 9-10.)  The issue became critical in September when classrooms had to be cleaned every night.  (Murphey Dep. p. 58, l. 10-16.)

David Puckett complained that Bo Rodgers was giving him more work than the previous maintenance supervisor had given to him.  (Murphey Dep. p. 58, l. 25 - p. 59, l. 2.)  Kent Murphey explained to David Puckett that there were other tasks he no longer needed to do, so he had open time.  (Murphey Dep. p. 59, l. 2-8.)  He was being asked to shift, and pick up new duties.  (Murphey Dep. p. 59, l. 8-11.)  David Puckett accepted his regular assignments for the most part, except for cleaning the preschool.  (Murphey Dep. p. 70, l. 7-9.)  He was not overwhelmed by changes to his daily schedule.  (Murphey Dep. p. 70, l. 10-12.)  He just resisted cleaning the preschool.  (Murphey Dep. p. 70, l. 12-14.)  His attitude since June

4

2012 had been that he was not going to do what he was told to do.  (Murphey Dep. p. 89, l. 22-25.)  Therefore, Kent Murphey terminated David Puckett on September 30, 2012.  (Murphey Dep. p. 81, l. 24 - p. 82, l. 1.)

On the day David Puckett was terminated, but after the termination had occurred, David Puckett's wife, Joyce Puckett, talked to Kent Murphey.  (J. Puckett Dep. p. 55, l. 10-14.)[2]  Mrs. Puckett told Kent Murphey, for the first time, that David Puckett was schizophrenic.  (J. Puckett Dep. p. 55, l. 15-18; p. 100, l. 19 - p. 101, l. 4.)

David Puckett is currently treated by Dr. Richard G. Hunter.  (Hunter Dep. p. 4, l. 25 - p. 5, l. 2.)[3]  Dr. Hunter is dual trained as a neurologist/psychiatrist.  (Hunter Dep. p. 5, l. 14-17.)  Dr. Hunter began treating David Puckett in March 2011.  (Hunter Dep. p. 7, l. 17-19.)

Dr. Hunter formally diagnosed David Puckett with schizophrenia on October 2, 2012.  (Hunter Dep. p. 8, l. 12-19.)  Dr. Hunter had not told David Puckett that he thought he had schizophrenia prior to making his diagnosis on October 2, 2012.  (Hunter Dep. p. 9, l. 12-15.)  At the time David Puckett was fired by the Church, he had not been diagnosed with schizophrenia.  (Hunter Dep. p. 23, l. 12-16.)  Prior to formally diagnosing Mr. Puckett with schizophrenia, Dr. Hunter never told anyone that he believed David Puckett had schizophrenia.  (Hunter Dep. p. 9, l. 4-

---

[2] Excerpts from the deposition of Joyce Puckett are attached as Exhibit "B".
[3] Excerpts from the deposition of Dr. Richard G. Hunter are attached as Exhibit "C".

5

8.) Dr. Hunter never spoke with David Puckett's employer about his diagnosis. (Hunter Dep. p. 9, l. 9-11.)

Dr. Hunter opined that David Puckett is not competent to be deposed. (Hunter Dep. p. 18, l. 6-14.)  He does not think David Puckett could testify truthfully.  (Hunter Dep. p. 18, l. 15-23.)  Joyce Puckett, although not medically trained, stated that David Puckett does not know the difference between reality and non-reality.  (J. Puckett Dep. p. 102, l. 3-25.)  As a result of the testimony of Dr. Hunter and Joyce Puckett, David Puckett has not been deposed.

### III.　ARGUMENT AND CITATION OF AUTHORITY

#### A.　Legal Standard For Summary Judgment.

Summary judgment is authorized when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Vaughn v. Nationsbank Corporation, 137 F.Supp. 2d 1317, 1321 (N.D. Ga. 2000).  As the moving party, the Defendants recognize that they have the burden to show the Court that there is an absence of evidence to support an essential element of the Plaintiffs' case.  The Court views the evidence, and all inferences from the evidence in the light most favorable to the non-moving party, in this case the Plaintiffs.  Id.

If the moving party has met its burden, the non-moving party may not rely upon allegations or denials in the pleadings, but must respond with sufficient evidence to withstand a directed verdict motion at trial. Todd v. McCahan, 158 F.Supp. 2d 1369, 1376 (N.D. Ga. 2000.)  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Gilliard v. Georgia Dept. of Corrections, 500 Fed. Appx. 860, 863 (11th Cir. 2012), quoting Brooks v. Cnty Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir. 2006.)

### B. Legal Standard Under The Americans With Disabilities Act.

The Americans with Disabilities Act ("ADA") was enacted in 1990 to prohibit "an employer from discriminating against a qualified individual with a disability based upon his or her known physical or mental impairments." Todd, supra at 1376, 42 U.S.C. § 12112 (1994.)  In 2008, Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), which became effective January 1, 2009. Dulaney v. Miami-Dade County, 481 Fed. Appx. 486, 489 n.3 (11th Cir. 2012.) The ADAAA amended the definition of "disability". Id.  It also stated that "the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." 42 U.S.C. § 12102 (a)(4)(A).

A discrimination claim can be supported by direct or circumstantial evidence. Rossi v. Fulton County, Georgia, 2013 U.S. Dist. LEXIS 44781, *33 (N.D. Ga. 2013) adopted at Rossi v. Fulton County Bd. Of Assessors, 2013 U.S. Dist. LEXIS 40889 (N.D. Ga. 2013.) Direct evidence is evidence, which proves the existence of a fact in issue without inference or presumption. Dickey v. Dollar General Corporation, 351 Fed. Appx. 389, 392 (11th Cir. 2009.) It is evidence from which a jury concludes more likely than not that the adverse employment decision was motivated by the protected characteristic. Id. David Puckett cannot point to any evidence in the record from which a jury could make such a finding.

If there is no direct evidence of discrimination, the Plaintiff can establish a *prima facie* case of discrimination using the formula set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973.) Rossi, supra at *33. The McDonnell Douglas framework states that a *prima facie* case of discrimination is established when the plaintiff shows that: (1) he has a disability; (2) he is a qualified individual with or without a reasonable accommodation; and (3) he was discriminated against because of his disability. Rossbach v. City of Miami, 371 F.3d 1354, 1356-57 (11th Cir. 2004) (per curiam.) "Once the plaintiff establishes a *prima facie* case of discrimination under the ADA, if the employer articulates a legitimate, non-discriminatory reason for its alleged discriminatory

action, the plaintiff must show that the reason was merely a pretext for discrimination." Dulaney, supra at 489-90.

### C. Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination.

#### 1. The Plaintiff Cannot Show He Had A Disability When He Worked At First Baptist.

A disability is defined as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1)

##### a. David Puckett Did Not Have A Physical Or Mental Impairment When He Worked At First Baptist.

There is no testimony that David Puckett had a mental or physical impairment when he worked at First Baptist. Dr. Hunter did not diagnose Mr. Puckett as schizophrenic until after he was terminated by the Church. It would be speculation to believe that the termination somehow caused David Puckett's mental status to deteriorate, but if it did, this would tend to establish that David Puckett was schizophrenic after he was terminated, but that he was not schizophrenic when working at the Church. Although Dr. Hunter had been seeing Mr. Puckett prior to his termination, he did not diagnose Mr. Puckett with schizophrenia until **after** the

9

termination. Other than Mr. Puckett being diagnosed as schizophrenic after he worked at First Baptist, there is no evidence that he had a physical or mental impairment at any time.

There is also no evidence that one or more of David Puckett's major life activities was limited because of a physical or mental impairment. Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. 42 U.S.C. § 12102(2)(B).

The testimony of Kent Murphey is that David Puckett did his job adequately for over a decade. Even at the end of David Puckett's employment, he continued to satisfactorily perform the tasks he was willing to do. He simply balked at the task of cleaning the classrooms. The record is devoid of any testimony that any of David Puckett's major life activities was substantially limited for any reason while he was an employee at First Baptist.

### b. David Puckett Did Not Have A Record Of Impairment, Nor Was He Regarded As Having An Impairment.

Dr. Hunter did not diagnose David Puckett as having schizophrenia until October 2, 2012. Mrs. Puckett did not tell Kent Murphey that David Puckett was schizophrenic until September 30, 2012, after David Puckett was fired. There is no evidence that David Puckett had a record of schizophrenia or any other impairment until after he was terminated.

A person is regarded as having an impairment "if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

The testimony of Kent Murphey is that David Puckett was shy and preferred not to be around groups of people. This is certainly not evidence of a disability, nor is it evidence that anyone at the Church regarded David Puckett as having a disability, or that he was subject to discrimination because of an actual or perceived impairment.

David Puckett has not shown that he had a physical or mental impairment that substantially limited a major life activity, that he had a record of such an

impairment, or that he was regarded as having an impairment. Therefore, he has failed to establish the first element of a *prima facie* case.

### 2. David Puckett Was A Qualified Individual.

The Defendants do not dispute that David Puckett can establish the second element of a *prima facie* case, which is that he was a qualified individual. In fact, it is the Church's position that despite being a qualified individual, David Puckett simply refused to do the work he was qualified to do.

### 3. David Puckett Was Not Terminated Because Of A Disability.

Even if we were to assume *arguendo* that David Puckett was disabled, he cannot establish the third element of a *prima facie* case, that is, that he was terminated because of his disability. The evidence is that the Church did not have knowledge of David Puckett having an alleged disability. Dr. Hunter did not diagnose David Puckett as schizophrenic until after Mr. Puckett was terminated. Even then, Dr. Hunter did not tell anyone at the Church about this diagnosis. Mrs. Puckett's statement to Kent Murphey that her husband was schizophrenic, was also made only after David Puckett was terminated. Logic dictates that the Church could not have been motivated to act by a disability, of which they did not have any knowledge.

David Puckett cannot establish that he was disabled, or that he was terminated because of a disability. Therefore, he has failed to establish the first or

third elements of a *prima facie* case of discrimination. The Defendants' Motion for Summary Judgment should be granted on this basis.

### D. David Puckett Was Terminated for A Legitimate, Non-Discriminatory Reason.

Even if the Court finds that David Puckett has established a *prima facie* case, the Church has articulated a legitimate, non-discriminatory reason for terminating David Puckett. The evidence is that in June, 2011, David Puckett was disciplined for poor performance. Kent Murphey testified that in June, 2012, a problem arose because of David Puckett's refusal to clean classrooms when the Church's preschool program expanded. David Puckett was able to do the work as he had been relieved of other responsibilities. David Puckett showed he was capable of doing maintenance work during the more than ten (10) years that he was a maintenance worker at the Church. The problem came to a head in September, 2012, when the preschool became a full-time program. He was terminated at that time. David Puckett's refusal to do work, which was part of his job and which he was capable of doing, was a legitimate reason to terminate his employment. It was a reason that would motivate a reasonable employer to fire its employee. There is no evidence that Kent Murphey's decision to terminate Mr. Puckett resulted from a discriminatory motive.

## IV. CONCLUSION

David Puckett has failed to present direct evidence of discrimination, and has failed to present circumstantial evidence to establish a *prima facie* case of discrimination. There is no evidence that he was disabled when he worked for First Baptist, or that he was terminated because of a disability. Additionally, First Baptist has produced evidence that Mr. Puckett was terminated because of his refusal to clean classrooms. This was a legitimate, non-discriminatory reason for termination. The Defendants respectfully request that their Motion for Summary Judgment be granted.

Respectfully submitted this 14th day of May, 2014.

**HALL BOOTH SMITH, P.C.**

/s/ Richard N. Sheinis
Richard N. Sheinis
Georgia Bar No. 639865
Jeffery Randolph Saxby
Georgia Bar No. 623423
*Attorneys for Defendants*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
Telephone: (404) 954-5000
Facsimile: (404) 954-5020

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT upon all parties to this matter by electronically filing with the CM/ECF filing system, and that service of the following individuals will be accomplished by the CM/ECF system:

John D. Marshall, Esq.<br>
The John Marshall Law Firm<br>
12600 Deerfield Parkway, Suite 100<br>
Alpharetta, Georgia  30004

This 14th day of May, 2014.

                                        **HALL BOOTH SMITH, P.C.**

                                        /s/ Richard N. Sheinis
                                        Richard N. Sheinis
                                        Georgia Bar No. 639865
                                        Jeffery Randolph Saxby
                                        Georgia Bar No. 623423
                                        *Attorneys for Defendants*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
Telephone:  (404) 954-5000
Facsimile:   (404) 954-5020

This is to certify that this document was prepared in accordance with Court Rule L.R. 5.1B, N.D. Ga., in the Times New Roman 14 Point.